UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SARA VALINJEAD LEJUEZ, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 17-cv-1767 (APM) |
| GRANT TURNER, Chief Executive Officer, U.S. Agency for Global Media,[1] | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

Plaintiff Sara Lejuez brought this action against Defendant Grant Turner, Chief Executive Officer of the U.S. Agency for Global Media ("Agency"),[2] in his official capacity, claiming violations of Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 791, *et seq.* Plaintiff, a former executive producer at the Agency, alleges that after she filed a sexual harassment report against a male subordinate, she suffered retaliation from Agency management and, as a result, took extended medical leave. She claims the Agency illegally denied her requests for reasonable accommodation; effectively demoted her from producing news programming; and ultimately fired her from federal service.

Defendant now moves for partial dismissal or, alternatively, partial summary judgment. For the reasons stated below, the court denies Defendant's motion.

---

[1] Grant Turner, in his official capacity as Chief Executive Officer, U.S. Agency for Global Media, is substituted as defendant for John Lansing under Federal Rule of Civil Procedure 25(d).
[2] Formerly known as the Broadcasting Board of Governors.

II.

Defendant styles his motion as a partial motion to dismiss or, in the alternative, a partial motion for summary judgment. *See* Def.'s Partial Mot. to Dismiss or, Alternatively, for Partial Summ. J., ECF No. 25 [hereinafter Def.'s Mot.]. Because the motion presents evidence outside the pleadings, the court must treat it as one for partial summary judgment. *See* Fed. R. Civ. P. 12(d).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a court applies this standard, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute is "genuine" only if a reasonable factfinder could find for the nonmoving party; a fact is "material" only if it can affect the outcome of litigation. *Id.* at 248–49. The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (cleaned up).

III.

Despite Defendant's assertions, Plaintiff's Title VII claims (Counts I–III of the Complaint) and Rehabilitation Act claims (Counts IV–VI) survive summary judgment in full. The court briefly addresses Defendant's arguments related to each count below.

*Count I.* Defendant contends that Count I (sexual harassment/hostile work environment) improperly incorporates allegations that Dr. Setareh Sieg—an Agency employee and the host of

the show on which Plaintiff worked—repeatedly "ridiculed and bullied" Plaintiff between 2008 and 2012.  Def.'s Mot. at 7.  These allegations, Defendant claims, are distinct from the sexual harassment and retaliation allegations Plaintiff initially presented to her Equal Employment Opportunity counselor, and thus, they lack the cohesiveness necessary to be considered part of the same hostile work environment claim.  *Id.* at 7–8 (citing *Wise v. Ferriero*, 999 F. Supp. 2d 286 (D.D.C. 2013)).

But as Plaintiff rightly notes, Count I does not rely on Sieg's conduct between 2008 and 2012 as part of Plaintiff's actionable claim.  *See* Pl.'s Opp'n to Def.'s Mot., ECF No. 28 [hereinafter Pl.'s Opp'n], at 27; Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 67–72 (specifically referencing actions from 2013 onwards).  Instead, Plaintiff cites that conduct as probative in establishing that, among other things, Sieg "created a toxic environment for her" and "consistent with this history of abusive behavior towards [Plaintiff], proceeded to treat [her] complaint of sexual harassment with scorn and hostility, contributing to the retaliatory hostile work environment inflicted by management."  Pl.'s Opp'n at 27.  Such use of prior conduct is consistent with the strictures of Title VII.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does [Title VII] bar an employee from using [] prior acts as background evidence to support a timely claim.").  The court therefore denies Defendant's motion as to Count I.

*Count II.*  Defendant insists that portions of Count II (Title VII retaliation) do not constitute a cognizable claim of constructive demotion.  Def.'s Mot. at 8–10.  The Complaint alleges that Plaintiff's supervisors took materially adverse actions against Plaintiff, "including constructively demoting her" by having her produce talk shows rather than hard news.  Compl. ¶ 76; *see also id.* ¶ 46.  Defendants seize on the quoted language, claiming that Plaintiff does not allege the requisite "intolerable working condition[s] that forced her to transfer positions" and that "no reasonable

3

jury" could conclude that "having to produce talk shows" would "constitute 'intolerable' working conditions sufficient to state a prima facie claim of constructive demotion due to hostile work environment." Def.'s Mot. at 10.

Defendant's argument misconstrues Plaintiff's claim of "constructive demotion." Plaintiff does not contend that she was constructively demoted in the sense that her workplace became so intolerable that she was forced to accept a lesser position. *See Tressler v. Nat'l R.R. Passenger Corp.*, 819 F. Supp. 2d 1, 5 (D.D.C. 2011) (finding that the plaintiff had stated a plausible claim for constructive demotion where she alleged that she "took a position as a yard engineer for lower pay rather than face continued harassment"). Rather, Plaintiff is simply claiming that "the diminishment of her responsibilities once she returned to work [in] October 2015 was effectively a demotion which . . . constituted retaliation for her prior EEO activity." Pl.'s Opp'n at 28; *see also* Compl. ¶¶ 76–78. Importantly, "[w]hether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question." *Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007). Because Defendant fails to provide the court with any reason to conclude otherwise, it denies the motion as to Count II.

*Count III.* Defendant submits that Count III (retaliatory hostile work environment) is deficient because the underlying allegations "are neither sufficiently cohesive nor sufficiently severe or pervasive." Def.'s Mot. at 13. As for cohesiveness, Defendant notes that Plaintiff's allegations are against separate individuals and involve different actions. *Id.* at 14. In Defendant's view, Plaintiff's allegations against Mohammed Manzarpour (her Senior Executive Editor) "amount to an unpleasant telephone conversation" while the other allegations against Aurea Nascimento (her Operations Manager) "relate primarily to [Plaintiff's] work schedule and assignments." *Id.* As for severity and pervasiveness, Defendant contends that one telephone call

and "ordinary and routine comments about . . . work assignments and schedule could not be considered" to "alter the conditions of [Plaintiff's] employment and create an abusive work environment." *Id.* at 14 (cleaned up).

The court disagrees. Hostile work environment claims do not require that the same person perform the underlying acts or that the acts themselves be of the same type. *See Vickers v. Powell*, 493 F.3d 186, 199 (D.C. Cir. 2007) (observing that acts should have "no relation" before a court can conclude that they are not part of the same hostile work environment); *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 386 (7th Cir. 2007) (faulting district court for focusing on identity of two harassers when both were employed by the defendant company, because "the entity responsible for complying with Title VII is the employer, of which [the plaintiff] had just one"). Here, Manzarpour and Nascimento both work for the same employer—the Agency—and Defendant has failed to cast doubt on the justifiable inference that each of their actions was triggered by Plaintiff's decision to report sexual harassment and her related request for reasonable accommodation. *See* Pl.'s Opp'n at 11–13, 16–23. Moreover, Defendant cannot sensibly argue that, taken together, the incidents Plaintiff claims contributed to a hostile work environment are insufficiently severe or pervasive to withstand summary judgment. Plaintiff provides deposition, affidavit, and documentary evidence of numerous instances of retaliatory conduct. *See* Pl.'s Opp'n at 32–33 (highlighting, for example, that she was pressured to drop a complaint against Nascimento; that she was told she was to blame for sexual harassment because she was "too beautiful"; and that she was told she could not perform her job due to her anxiety-related conditions even though she had previously excelled). At the very least, that evidence creates a genuine dispute as to whether Plaintiff's supervisors' conduct altered the conditions of her employment and created a hostile work environment. As a result, Defendant's motion is denied as to Count III.

*Count IV*.  Defendant maintains that Count IV (disability discrimination in violation of the Rehabilitation Act) cannot survive summary judgment, because the record demonstrates that the Agency terminated Plaintiff due to "being absent from work for an extended period of time and being unable to perform the duties of [her] position." Def.'s Mot. at 23.  Both reasons, Defendant claims, are legitimate and nondiscriminatory.  *Id.*  For support, Defendant points out that when the Agency proposed Plaintiff's termination, she had been out of the office for nearly two years.  *Id.* at 24.

But Plaintiff responds with direct evidence of discriminatory intent.  In a letter denying Plaintiff's request for medical accommodation, Nascimento told Plaintiff—without any support—that "even if your condition were to improve enough for you to return to work in four months, you cannot perform the essential functions of your job if you suffer from long-term or permanent anxiety or panic attacks." Pl.'s Opp'n, Ex. 53, ECF No. 28-1, at 4.  That unadorned statement reasonably suggests that the Agency's adverse employment actions against Plaintiff were due to discriminatory animus stemming from her disability.  Defendant offers no reply.  *See* Def.'s Reply, ECF No. 33 [hereinafter Def.'s Reply].  Because direct evidence of discriminatory intent "will generally entitle a plaintiff to a jury trial," *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (cleaned up), the court denies Defendant's motion as to Count IV.

*Count V*.  Defendant moves for summary judgment on Count V (denial of reasonable accommodation in violation of the Rehabilitation Act) for four reasons:  (1) Plaintiff's proposed accommodation for indefinite leave is unreasonable as a matter of law; (2) Plaintiff's proposed accommodation was for paid leave, which under the circumstances is unreasonable as a matter of law; (3) Plaintiff was not a "qualified individual" under the Rehabilitation Act; and (4) the Agency

engaged in an interactive reasonable accommodation process.  Def.'s Mot. at 19–23.  The court concludes that there are genuine disputes of material fact surrounding each reason.

As for the nature of the proposed accommodation, there remains a question of whether Plaintiff requested indefinite leave in the first place.  Defendant emphasizes that Plaintiff's request was for "at least four months of additional leave," Def.'s Mot. at 21 (quoting Compl. ¶ 50), and that she "provided no definite end date" to the Agency, *id.*  In response, Plaintiff points to her physician's letter of support, which suggests that the "at least four months" language was really meant as an estimate of how long it would take before Plaintiff's health conditions could be "adequately treated and [she could] be re-evaluated."  Pl.'s Opp'n, Ex. 51, ECF No. 28-1, at 2.  Defendant replies that the letter also states that Plaintiff's disabilities "are long-term and possibly permanent," thus justifying the Agency's view that Plaintiff's leave would be practically indefinite.  Def.'s Reply. at 14.  Because a reasonable jury could side with either party on the timeframe of Plaintiff's proposed accommodation, and because Defendant does not contend that four months itself is unreasonable, the court denies summary judgment on that ground.  *See Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 648 (1st Cir. 2000) (noting that the inability to provide an absolutely assured time for return to employment does not necessarily make a request for leave to a particular date indefinite).

Nor is the record clear that Plaintiff demanded paid leave.  Defendant references EEOC guidelines on the implementation of the Rehabilitation Act for the proposition that *unpaid* leave "is a form of reasonable accommodation when necessitated by an employee's disability" while unaccrued *paid* leave is not.  Def.'s Mot. at 20 (quoting *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, 2002 WL 31994335, at *14).  Defendant then cites a letter from the Agency's Office of Civil Rights stating

7

that Plaintiff "is requesting to be placed on paid administrative leave for at least four (4) months as a reasonable accommodation." Def.'s Mot., Ex. S, ECF No. 25-1, at 1.  But Plaintiff counters with her attorney's email response to the Agency's denial of leave which states that "whether [the Agency] chooses to offer paid or unpaid leave as a reasonable accommodation is its choice, though [Plaintiff] certainly would <u>prefer</u> paid leave under the circumstances." Pl.'s Opp'n, Ex. 54, ECF No. 28-1, at 1 (emphasis in original).  In the court's view, the conflict in the record creates a dispute of material fact better fit for resolution by a jury.

Defendant also asserts that Plaintiff is not a "qualified individual" for purposes of the Rehabilitation Act's protections.  Def.'s Mot. at 21.  A qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8).  Citing *Minter v. District of Columbia*, 809 F.3d 66 (D.C. Cir. 2015), Defendant argues that because Plaintiff requested an indefinite period of leave, she would be unable to perform the essential functions of her job and therefore was not entitled to a reasonable accommodation.  Def.'s Mot. at 21–22.  But as Defendant implicitly admits, the comparison to *Minter* turns on whether Plaintiff actually requested indefinite leave.  *See id.*  And as illustrated above, that factual question is disputed and ought to be resolved by a jury.  Thus, the broader issue of whether Plaintiff is a qualified individual cannot be resolved on summary judgment either.

Finally, Defendant contends that Plaintiff fails to show—as is required under the Rehabilitation Act—that the Agency did not engage in an interactive reasonable accommodation process.  Def.'s Mot. at 22 (citing *Alston v. WMATA*, 571 F. Supp. 2d 77, 81 (D.D.C. 2008)). Defendant notes that the Agency "[sought] additional information from [Plaintiff], [met] with [Plaintiff] and her attorney, consider[ed] her request for leave and engag[ed] in exhaustive efforts

to locate positions for [Plaintiff] after she requested reassignment." Def.'s Mot. at 22. Plaintiff, on the other hand, questions the Agency's good faith. She emphasizes that "only *two searches* were made for possible positions over a period of *16 month[s]*." Pl.'s Opp'n at 40 (emphasis in original). She also offers affidavit evidence from Manzarpour that Sieg ultimately wanted Plaintiff removed rather than reassigned because reassignment "would mean putting [Plaintiff] on a detail and not freeing up her EP billet." *Id.* at 41; *see id.*, Ex. 8, ECF No. 28-1, ¶ 7. That evidence suffices to create a genuine dispute over whether the Agency's efforts to accommodate Plaintiff were indeed pretextual, so summary judgment on this ground is once again inappropriate.[3]

*Count VI*. As with Count IV, Defendant's argument for dispensing with Count VI (retaliation in violation of the Rehabilitation Act) on summary judgment rests on the view that the Agency was within its rights to terminate Plaintiff. Def.'s Mot. at 23–24 (citing Plaintiff's inability to perform her duties). Because Plaintiff has asserted a prima facie retaliation claim, *see* Pl.'s Opp'n at 44–45, Defendant must articulate a legitimate nondiscriminatory reason for its termination decision, *Cones v. Shalala*, 199 F.3d 512, 520 (D.C. Cir. 2000).

Here, Plaintiff overcomes summary judgement by providing enough evidence questioning the legitimacy of the Agency's reasoning. Specifically, she refers to a January 17, 2017 letter from her physician stating that, at the time, Plaintiff was "capable of returning to her job as a news producer and of performing the essential functions of such position." Pl.'s Opp'n, Ex. 60, ECF No. 28-1, at 2. Although the letter goes on to state that Plaintiff's capacity to return was conditional

---

[3] In passing, Defendant also argues that the court should dispense with Count V because the Agency "*de facto* granted" Plaintiff's request for accommodation when it placed her on paid leave for the period of November 2, 2015, through her termination. Def.'s Mot. at 21. But Plaintiff persuasively responds to this "no-harm-no-foul" rationale by illustrating the legal rights and protections that attend only a formal grant of reasonable accommodation. Pl.'s Opp'n at 38–39 (noting, for example, the employee's right to return to his/her same position absent undue hardship to the employer). These differences explain why any *de facto* grant by the Agency cannot make up for a failure to formally grant reasonable accommodation under the Rehabilitation Act.

on her not having to report to the same supervisors or work with the individual who sexually abused her, *id.*, the court acknowledges the genuine dispute over whether those qualifications amount to a "medical inability" to return to work. Because a reasonable jury could agree with Plaintiff, and thus could consider the Agency's stated rationale illegitimate, summary judgment is denied as to Count VI.

## IV.

For the reasons stated above, Defendant's Partial Motion to Dismiss or, Alternatively, for Partial Summary Judgment, ECF No. 25, is denied.

Dated: October 23, 2020

Amit P. Mehta
United States District Court Judge